**Oral Argument Not Yet Scheduled**
**No. 13-7115 (Consolidated with No. 14-7025)**

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

EUGENE NYAMBAL,

*Plaintiff-Appellee*,

*v.*

THE INTERNATIONAL MONETARY FUND,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the District of Columbia, No. 1:12-cv-01037-EGS (Sullivan, J.)

## BRIEF FOR APPELLANT INTERNATIONAL MONETARY FUND

PATRICK J. CAROME
CHRISTOPHER L. MORGAN
ADAM I. KLEIN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
patrick.carome@wilmerhale.com

May 2, 2014

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Defendant-Appellant International Monetary Fund (the "Fund") hereby certifies as follows:

**A.     Parties and Amici:**

The parties in the district court and this Court are:

*Defendant-Appellant*

The International Monetary Fund

*Plaintiff-Appellee*

Eugene Nyambal

*Amici*

There were no amici in the district court.

**B.     Rulings Under Review:**

The rulings under review are:

1.     The July 9, 2013 Minute Order of the U.S. District Court for the District of Columbia (Sullivan, J.) in Civil Action No. 1:12-cv-01037-EGS, granting Mr. Nyambal's motion for a stay and jurisdictional discovery. That motion sought to stay consideration of the Fund's motion to dismiss pending "jurisdictional discovery" directed at the Fund on the question of whether the Fund had expressly waived its absolute immunity from judicial process for purposes of

this suit.  The order has not been reported, but is reproduced in the Joint Appendix ("JA") at JA43.

2.     The February 12, 2014 Minute Order of the U.S. District Court for the District of Columbia (Sullivan, J.) in Civil Action No. 1:12-cv-01037-EGS, denying the Fund's motion for reconsideration of the district court's July 9, 2013 Order.  This order has not been reported, but is reproduced in the Joint Appendix at JA62.

3.     The February 12, 2014 Minute Order of the U.S. District Court for the District of Columbia (Sullivan, J.) in Civil Action No. 1:12-cv-01037-EGS, denying the Fund's motion to dismiss.  The Fund moved to dismiss Mr. Nyambal's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject-matter jurisdiction and failure to state a claim on which relief may be granted, based upon the Fund's absolute immunities from suit and all other forms of judicial process.  The district court denied the motion on the ground of mootness, apparently because Mr. Nyambal had filed an Amended Complaint. This order has not been reported, but is reproduced in the Joint Appendix at JA63.

**C.    Related Cases:**

After noticing its appeal from the district court's July 9, 2013 discovery order (which this Court docketed as Case No. 13-7115), the Fund moved for reconsideration of that order.  On February 12, 2014, the district court issued separate orders denying the motion for reconsideration and the Fund's earlier-filed motion to dismiss.  On February 28, 2014, the Fund noticed its appeal of those orders, and that appeal was docketed in this Court as Case No. 14-7025.  On April 10, 2014, this Court granted the Fund's consent motion to consolidate the two appeals.

|  | /s/ Patrick J. Carome |
| --- | --- |
| May 2, 2014 | PATRICK J. CAROME |

## CORPORATE DISCLOSURE STATEMENT

As the International Monetary Fund is not a corporation, association, joint venture, partnership, syndicate, or other similar entity, no disclosure statement is required under either Federal Rule of Appellate Procedure 26.1 or D.C. Circuit Rule 26.1.

## TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED
    CASES ....................................................................................................i

CORPORATE DISCLOSURE STATEMENT ........................................................iv

TABLE OF AUTHORITIES ................................................................... vii

GLOSSARY.................................................................................... xii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................4

RELEVANT STATUTORY AND REGULATORY PROVISIONS .......................5

INTRODUCTION ...................................................................................5

STATEMENT OF THE CASE.................................................................6

SUMMARY OF ARGUMENT ..............................................................17

STANDARD OF REVIEW ....................................................................21

ARGUMENT .........................................................................................22

I.    THE DISTRICT COURT'S ORDERS PERMITTING PLAINTIFF TO
    PROPOUND JURISDICTIONAL DISCOVERY REQUESTS TO THE
    FUND VIOLATE THE FUND'S ABSOLUTE IMMUNITIES FROM
    JUDICIAL PROCESS .......................................................................22

    A.    Under Its Articles Of Agreement And The IOIA, The
        Fund Is Absolutely Immune From All Forms Of Judicial
        Process, Including Compulsory Discovery, Absent An
        Express Waiver....................................................................23

B.      If They Exist At All, The Circumstances In Which The Fund May Properly Be Subject To Jurisdictional Discovery Are Very Narrow And Require, At A Minimum, Specific And Plausible Allegations Of An Express And Applicable Waiver ...........................................................33

C.      The District Court Erred In Ordering Jurisdictional Discovery Based On Plaintiff's Purely Speculative, Implausible And Legally Flawed Assertions Regarding Waiver .....................................................................................40

1.      The first discovery order was erroneously granted based on Plaintiff's unsubstantiated and far-fetched speculation................................................................41

2.      The second discovery order erroneously credited Plaintiff's claim that the contracts are inconsistent on the subject of waiver of immunities....................................46

a.      *Article 13.1 of the Credit Union Lease is not inconsistent with the Lease's clear disclaimer of waiver* .........................................................48

b.      *Article 15.1 of the Credit Union Lease is not inconsistent with the Lease's clear disclaimer of waiver* .........................................................50

II.     THE DISTRICT COURT'S DENIAL OF THE FUND'S MOTION TO DISMISS WAS ERRONEOUS AND VIOLATES THE FUND'S ABSOLUTE IMMUNITIES ...............................................................54

CONCLUSION .........................................................................................57

CERTIFICATE OF COMPLIANCE......................................................58

CERTIFICATE OF SERVICE ...............................................................59

ADDENDUM ...........................................................................................A1

# TABLE OF AUTHORITIES*

## CASES

Page(s)

\* *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528 (5th Cir. 1992)..................35, 37

*Aschroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................38, 39

\* *Atkinson v. Inter-American Development Bank*, 156 F.3d 1335
(D.C. Cir. 1998) ........................................................................................9, 24, 28

\* *Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008) ........................................38, 42

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................38

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino &
Resort*, 629 F.3d 1173 (10th Cir. 2010)........................................................27

*Cohen v. Beneficial Industry Loan Corp.*, 337 U.S. 541 (1949) ..........................1, 2

*College Savings Bank v. Florida Prepaid Postsecondary Education
Expense Board*, 527 U.S. 666 (1999) ............................................................32

*Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v.
Gonzalez-Feliciano*, 695 F.3d 83 (1st Cir. 2012)........................................32

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) ............................................2

*Crist v. Republic of Turkey*, 995 F. Supp. 5 (D.D.C. 1998) ..............................18, 37

*Davila v. United States*, 713 F.3d 248 (5th Cir. 2013) ..........................................37

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994) ...................2

*Dujardin v. International Bank for Reconstruction & Development*,
9 F. App'x 19 (D.C. Cir. 2001) ........................................................................24

*Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) ..................................................27

\* *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996).............27, 35, 38

---

\*      Authorities chiefly relied upon are marked with astersisks.

*Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99 (D.D.C. 2006) ........................................55

*EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007) .............................36

\* *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012) ......................35, 36

*Essex Insurance Co. v. Doe ex rel. Doe*, 511 F.3d 198
    (D.C. Cir. 2008) ........................................................................................22

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438
    (D.C. Cir. 1990) ........................................................................................26

*Foster v. Neilson*, 27 U.S. (2 Pet.) 253 (1829) .........................................................23

\* *In re Papandreou*, 139 F.3d 247 (D.C. Cir. 1998) ..................................3, 18, 27, 36

*Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 F.
    App'x 13 (D.C. Cir. 2008) ....................................................................25, 27

\* *Jacobs v. Vrobel*, 724 F.3d 217 (D.C. Cir. 2013) ......................................38, 39, 40

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020
    (D.C. Cir. 1997) ..........................................................................................4

*Keeney v. United States*, 218 F.2d 843 (D.C. Cir. 1954).........................................29

*Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123
    (D.C. Cir. 2004) ......................................................................................3, 21

*Kirkham v. Societe Air France*, 429 F.3d 288 (D.C. Cir. 2005).............................21

*Liberian Eastern Timber Corp. v. Government of Republic of Liberia*,
    659 F. Supp. 606 (D.D.C. 1987).................................................................30

*McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485
    (D.C. Cir. 2008) ........................................................................................24

*McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101
    (D.C. Cir. 2001) ........................................................................................21

\* *Mendaro v. World Bank*, 717 F.2d 610 (D.C. Cir. 1983) ...............23, 25, 29, 31, 43

*Millicom International Cellular, S.A. v. Republic of Costa Rica*,
    Civ. No. 96-315, 1997 WL 527340 (D.D.C. Aug. 18, 1997).....................37

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................4

*Morgan v. International Monetary Fund*, Civ. No. 95-0143, 1995 WL
    755105 (D. Idaho Oct. 6, 1995).......................................................................26

*Nix v. Hoke*, 62 F. Supp. 2d 110 (D.D.C. 1999) ........................................56

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)....................................................4

*Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36
    (D.C. Cir. 2000) ............................................................................35, 36

\* *Polak v. International Monetary Fund*, 657 F.Supp. 2d 116
    (D.D.C. 2009) ...........................................................26, 28, 34, 35, 42

*Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82
    (D.C. Cir. 2002) .....................................................................................3

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993).................................................................................4

*RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) .......................................................39

*Samantar v. Yousuf*, 560 U.S. 305 (2010) .............................................35

*Sloan v. Department of Housing & Urban Development*, 236 F.3d 756
    (D.C. Cir. 2001) ................................................................................39

*Taiwan v. United States District Court for the Northern District of
    California*, 128 F.3d 712 (9th Cir. 1997) ....................................29

\* *Tuck v. Pan American Health Organization*, 668 F.2d 547
    (D.C. Cir. 1981) ........................................................................27, 56

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010)...............21

*United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995)...............4

*Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006)...............................21

## CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. art. VI, cl. 2............................................................................23

\* Bretton Woods Agreements Act, 22 U.S.C. § 286h ....................................1, 4, 6, 23

Bretton Woods Agreements Act, Pub. L. No. 79-171, 59 Stat. 512
(1945)..................................................................................................7, 8

\* International Monetary Fund Articles of Agreement, 60 Stat. 1401,
T.I.A.S. No. 1501 (1945); amended, 20 U.S.T. 2775, T.I.A.S.
No. 6748 (1968); amended, 29 U.S.T. 2203, T.I.A.S. No. 8937
(1976); amended, T.I.A.S. No. 11898 (1990), current version
*available at* http://www.imf.org/external/pubs/ft/aa/index.htm
(last visited May 1, 2014) ................... 1, 4, 7, 8, 17, 20, 23, 24, 28, 33, 43, 53

\* International Organizations Immunities Act,
22 U.S.C. § 288a.................................... 1, 4, 6, 8, 9, 17, 20, 24, 26, 28, 33, 43

International Organizations Immunities Act, Pub. L. No. 79-291,
59 Stat. 669 (1945) ......................................................................................8

28 U.S.C.
§ 1291 ...............................................................................................1, 2
§ 1346 .....................................................................................................39
§ 1604 .....................................................................................................35
§ 1605 .....................................................................................................35
§ 1607 .....................................................................................................35
§ 2107 .......................................................................................................1
§ 2674 .....................................................................................................39
§ 2679 .....................................................................................................39
§ 2680 .....................................................................................................39

Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988) ....................................39

## RULES, AND REGULATIONS

Fed. R. App. P. 4 ..........................................................................................1

Fed. R. Civ. P.
Rule 12..............................................................................................11
Rule 59..............................................................................................15

## EXECUTIVE MATERIALS

Exec. Order 9751, 11 Fed. Reg. 7713 (July 11, 1946) ...................................9, 24, 25

## OTHER AUTHORITIES

International Monetary Fund, IMF Executive Directors and Voting Power, http://www.imf.org/external/np/sec/memdir/eds.aspx (last visited May 1, 2014) ........................................................ 30, 54

List of Members, International Monetary Fund, https://www.imf.org/ external/np/sec/memdir/memdate.htm (last visited May 1, 2014) ............................................................................................ 7

*Restatement (Third) of the Foreign Relations Law* § 467 (1987) ........................... 25

6 Wright & Miller, *et al.*, *Federal Pratice and Procedure* § 1476 (3d ed. 2014) ........................................................................... 55

## GLOSSARY

FSIA        Foreign Sovereign Immunities Act

FTCA        Federal Tort Claims Act

IOIA        International Organizations Immunities Act

## JURISDICTIONAL STATEMENT

Two federal statutes grant the International Monetary Fund (the "Fund") absolute immunity from suit and all other forms of judicial process.  *See* Bretton Woods Agreements Act, 22 U.S.C. § 286h (codifying Article IX, Sections 2-9, of the Fund's Articles of Agreement); International Organizations Immunities Act ("IOIA"), 22 U.S.C. § 288a(b).  The district court therefore lacked subject-matter jurisdiction in this matter absent an express waiver by the Fund of its immunities. Nevertheless, the district court granted Plaintiff's request to propound jurisdictional discovery requests to the Fund, JA43, denied the Fund's motion for reconsideration of the discovery order, JA62, and denied as "moot" the Fund's previously filed motion to dismiss, JA63.

Notices of appeal were timely filed pursuant to 28 U.S.C. § 2107 and Federal Rule of Appellate Procedure 4(a)(1)(A).  The Fund filed its notice of appeal from the order of the district court granting Mr. Nyambal's request for jurisdictional discovery, dated July 9, 2013, on August 6, 2013.  JA43, JA56-58. On February 28, 2014, the Fund filed a notice of appeal from the February 12, 2014 orders of the district court denying, respectively, the Fund's motion for reconsideration and its motion to dismiss.  JA62, JA63, JA76-77.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and the collateral order doctrine as set forth in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541,

546 (1949).  That doctrine governs decisions that "finally determine claims of right

separable from, and collateral to, rights asserted in the action."  *Id*. at 546.  Such

claims are "too important to be denied review and too independent of the cause

itself to require that appellate consideration be deferred until the whole case is

adjudicated."  *Id*.  The collateral order doctrine "is best understood not as an

exception to the 'final decision' rule laid down by Congress in § 1291, but as a

'practical construction' of it[.]"  *Digital Equip. Corp. v. Desktop Direct, Inc*., 511

U.S. 863, 868 (1994) (citing *Cohen*, 337 U.S. at 546).  Section 1291 therefore:

> entitles a party to appeal not only from a district court decision that
> ends the litigation on the merits and leaves nothing more for the court
> to do but execute the judgment, but also from a narrow class of
> decisions that do not terminate the litigation, but must, in the interest
> of achieving a healthy legal system, nonetheless be treated as "final."

*Id*. at 867 (internal quotation marks and citations omitted).  The Supreme Court has

defined the scope of orders that are immediately appealable under *Cohen* as those

that "[1] conclusively determine the disputed question, [2] resolve an important

issue completely separate from the merits of the action, and [3] [would] be

effectively unreviewable on appeal from a final judgment."  *Coopers & Lybrand v.

Livesay*, 437 U.S. 463, 468 (1978).

   The district court's orders directing the Fund to respond to jurisdictional

discovery requests and denying the Fund's motion to dismiss are immediately

appealable under *Cohen*.  Absent appeal, the district court's orders requiring the

Fund to respond to jurisdictional discovery would conclusively determine whether the Fund may be subject to jurisdictional discovery in this matter notwithstanding its immunities from judicial process; that question is completely separate from the merits of Plaintiff's underlying tort claims; and, if the Fund were required to provide jurisdictional discovery, its immunities from such discovery would be vitiated and the discovery orders would effectively become unreviewable on appeal.  This Court has recognized the applicability of the collateral order doctrine in very similar circumstances, holding that because foreign governmental defendants enjoyed immunity not only from liability but also from the burdens of litigation, a trial court's order permitting a plaintiff to take "jurisdictional discovery" from the official was immediately reviewable.  *See In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998).

Similarly, with respect to the district court's denial of the Fund's motion to dismiss, this Court has repeatedly held that "[t]he denial of a motion to dismiss on the ground of sovereign immunity satisfies all three [collateral order doctrine] criteria, and is therefore subject to interlocutory review."  *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004); *see Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 92 (D.C. Cir.

2002); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1025 (D.C. Cir. 1997).[1]

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the Fund, which is absolutely immune from all forms of judicial process absent an express waiver, *see* Articles of Agreement of the International Monetary Fund, Art. IX, Section 3, codified by the Bretton Woods Agreements Act, 22 U.S.C. § 286h, and the IOIA, 22 U.S.C. § 288a(b), may be ordered to respond to discovery requests that purport to explore whether it has waived its immunities where the Fund has presented uncontroverted evidence that there has been no such waiver and where Plaintiff's suggestions regarding waiver are speculative and implausible.

2.     Whether the district court erred in denying the Fund's motion to dismiss, purportedly based on mootness arising from Plaintiff's intervening filing of an Amended Complaint, where the motion demonstrated that the Fund is

---

[1]     Although the cases cited in text involved immunities of foreign sovereigns rather than international organizations, there is no reason why the application of the collateral order doctrine should be narrower here, particularly given the *absolute* nature of the immunities enjoyed by the Fund.  Cases addressing other forms of immunity have reached the same conclusion.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993) (Eleventh Amendment immunity); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (qualified official immunity); *Nixon v. Fitzgerald*, 457 U.S. 731, 742-743 (1982) (absolute presidential immunity); *United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C. Cir. 1995) (Speech or Debate Clause immunity).

absolutely immune from Plaintiff's suit and where the new allegations contained in the Amended Complaint had no bearing on the Fund's absolute immunities with respect to Plaintiff's suit.

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

Pertinent statutes and regulations are set forth in the Addendum to this Brief.

## INTRODUCTION

The principal question in this appeal is whether an international organization that is absolutely immune from judicial process absent an express waiver of its immunities can be subjected to the burdens of litigation, and, in particular, be ordered to respond to discovery requests that purport to explore whether the organization has waived those immunities, despite uncontroverted evidence establishing that there has been no such waiver and where the Plaintiff's theory of possible waiver is entirely speculative and implausible. If Plaintiff were permitted to subject the Fund to so-called jurisdictional discovery in these circumstances, there would be nothing to stop *every* plaintiff from doing the same to the Fund and other absolutely immune international organizations in *every* case. That would substantially undermine the absolute immunities from all forms of judicial process that Congress, the Executive Branch and international treaty have conferred upon the Fund.

Under the Fund's Articles of Agreement, codified at 22 U.S.C. § 286h, and the IOIA, 22 U.S.C. § 288a(b), the Fund is absolutely immune from all forms of judicial process, including compulsory discovery requests, absent an express waiver. To the best of the Fund's knowledge, before the orders now on appeal, no court had ever ordered the Fund, or any other international organization that enjoys similar absolute immunities, to submit to discovery, "jurisdictional" or otherwise, over the objection of the organization.

Despite clear statutory text stating that the Fund's immunities can be negated only by an *express* waiver, and despite the Fund's sworn assurances and uncontroverted evidence that no such waiver exists here, JA25-26, JA40-42, the district court twice issued orders requiring the Fund to respond to Plaintiff's intrusive discovery requests, JA43, JA62. Those orders—based on nothing more than Plaintiff's implausible speculation and gross misreading of a few provisions in contracts between the Fund and certain third parties—defy Congress's statutory promise of absolute immunity to the Fund. As the Fund explains below, immediate dismissal, not compelled discovery, was the only legally correct course.

## STATEMENT OF THE CASE

### A.    The International Monetary Fund

The International Monetary Fund is an international intergovernmental organization established by a treaty that entered into force in the United States in

6

1945.  That treaty is called the Articles of Agreement of the International Monetary Fund ("Articles of Agreement").[2]  The purposes of the Fund are, *inter alia*, to promote international monetary cooperation, to facilitate the expansion and balanced growth of international trade, to promote exchange stability, and to provide temporary financial assistance to its member countries experiencing balance of payments difficulties.  *See* Articles of Agreement, Art. I.  The Fund is composed of 188 member countries.[3]  The United States accepted the Articles of Agreement and became a member of the Fund on December 27, 1945, and it has been a member ever since.  *See* Bretton Woods Agreements Act, Pub. L. No. 79-171, 59 Stat. 512 (1945).

Pursuant to the Articles of Agreement, the Fund is immune from every form of judicial process.  Article IX, Section 3 of the Articles of Agreement provides:

> *Immunity from judicial process.* The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.

---

[2]    *See* 60 Stat. 1401, T.I.A.S. No. 1501 (1945), amended, 20 U.S.T. 2775, T.I.A.S. No. 6748 (1968), amended, 29 U.S.T. 2203, T.I.A.S. No. 8937 (1976), amended, T.I.A.S. No. 11898 (1990).  The current version of the IMF's Articles of Agreement is available at http://www.imf.org/external/pubs/ft/aa/index.htm (last visited May 2, 2014).  Pertinent excerpts are reproduced in the Addendum to this brief.

[3]    International Monetary Fund, List of Members, https://www.imf.org/external/np/sec/memdir/memdate.htm (last visited May 2, 2014).

In addition, the Articles of Agreement establish that "[t]he archives of the Fund shall be inviolable," Articles of Agreement, Art. IX, § 5, and that the "[t]he official communications of the Fund shall be accorded by members the same treatment as the official communications of other members," *id.* at Art. IX, § 7.  In turn, the Bretton Woods Agreements Act explicitly gives these provisions the full force of law in the United States:

> The provisions of article IX, sections 2 to 9, both inclusive,…of the Articles of Agreement of the Fund…shall have full force and effect in the United States and its Territories and possessions upon acceptance of membership by the United States in, and the establishment of, the Fund….

Pub. L. No. 79-171, § 11, 59 Stat. at 516, codified at 22 U.S.C. § 286h.

The IMF enjoys another source of absolute immunity.  In 1945, Congress enacted the International Organizations Immunities Act, 59 Stat. 669-673 (1945), 22 U.S.C. §§ 288 *et seq*.  The IOIA grants designated international organizations "the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract."  22 U.S.C. § 288a(b).[4]  Like the Articles of Agreement, the IOIA also

---

[4]    As this Court has held, the IOIA codified such immunities as they existed at the time of its enactment in 1945, "when immunity of foreign sovereigns was absolute," and does not incorporate "subsequent changes to the law of immunity of

provides that "the archives of international organizations shall be inviolable." *Id*.

§ 288a(c).  President Truman designated the IMF as a public international

organization for purposes of the IOIA by executive order on July 11, 1946.  *See*

Exec. Order 9751, 11 Fed. Reg. 7713 (July 11, 1946).

The Fund is headquartered in downtown Washington, D.C.  JA8.  It leases

space within its headquarters building to several independent businesses, including

the Bank-Fund Staff Federal Credit Union (the "Credit Union").  *Id*.  It also

contracts with an independent security firm (the "Security Service") to provide

security for its premises.  *Id*.  The Fund's relationships with the Credit Union and

Security Service are governed by its written contracts with those entities.  SJA1-42

(Credit Union Lease), SJA43-289 (Security Service Contract).[5]  Each of those

agreements expressly preserves the Fund's immunities from every form of judicial

process and states that the Fund does not waive its immunities through the

agreement.  *See* SJA37 (Art. 28.1); SJA70 (Art. 18.0).

## B.    Plaintiff-Appellee's Claims

Plaintiff Eugene Nymabal is a former employee of the Fund whose

employment was terminated in June 2009.  JA12.  The sole event asserted in his

---

foreign sovereigns."  *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335, 1341 (D.C.
Cir. 1998).

[5]      As the contracts contain certain confidential business information, the Fund
filed the contracts under seal in the District Court and they are contained in a
separate joint appendix being filed under seal in this Court ("SJA").

original Complaint as the basis for his tort claims is an alleged interaction in July 2009 on the premises of the Credit Union between himself and persons he concedes were "independent contractor" security guards. *See* JA12-13. Specifically, Plaintiff alleges that he visited the Credit Union "to conduct a personal banking transaction," but was "approached by IMF security guards, who provide security to the Credit Union under a commercial contract with the IMF, and ordered to leave the premises of the Credit Union." *Id*. He further alleges that the security guards "accosted and escorted [him] from the Credit Union in full view of the public and a professional colleague…." JA13. He does not allege that he suffered any physical injury from this encounter.[6]

Based on that single alleged altercation, Plaintiff filed suit against the Fund, asserting claims for assault, false imprisonment, and intentional infliction of emotional distress. JA17-18. He named only the Fund as a defendant; he did not attempt to assert any claims against the private security guards who allegedly accosted him, the "independent contractor" that employed the guards, any

---

[6]     While the Complaint devotes only a single paragraph to describing the allegedly actionable interaction within the Credit Union, it also contains extensive allegations concerning an IMF-assisted mining project in Cameroon with which Plaintiff allegedly had some involvement before his termination. JA9-17. The Complaint does not explain how, if at all, those other allegations relate to his asserted tort claims.

personnel of the Credit Union, or the Credit Union itself.  His Complaint demands

three million dollars in compensatory damages.  JA19.

### C.    The Fund's Motion To Dismiss And Mr. Nyambal's Request For Jurisdictional Discovery

The Fund moved to dismiss the Complaint under Rules 12(b)(1) and

12(b)(6) on the grounds that it is absolutely immune from all forms of judicial

process and had not expressly waived its immunities.  JA22-23.  In support of that

motion, the Fund provided the sworn statement of Jianhai Lin, Secretary of the

International Monetary Fund, who stated that only the Executive Board of the Fund

can waive the Fund's immunities and that "[t]he Executive Board of the Fund has

not waived or authorized the waiver of the Fund's immunity from judicial process

with respect to [this] litigation, with respect to personal injury suits generally, or by

the terms of any contract with Plaintiff Eugene Nyambal."  JA25-26.

Plaintiff's response to the motion to dismiss did not contest that, in general,

the Fund is absolutely immune from suit and other judicial process.  *See* Pl.'s

Mem. in Opp. to Def.'s Mot. to Dismiss ("MTD Opp."), Dist. Ct. Dkt. No. 10

(Dec. 28, 2012).  Nevertheless, and despite Mr. Lin's unequivocal affidavit stating

there had been no applicable waiver of immunities, Plaintiff asked the district court

to stay its consideration of the motion to dismiss and allow him to commence

"jurisdictional discovery."  *Id*. at 1.  Without pointing to any evidence or factual

basis to contradict the Fund's non-waiver affidavit, Plaintiff asserted that that such

11

discovery would show "that the terms of the contracts between and among the

IMF, the Credit Union, and the security firm will establish an express waiver of the

IMF's immunity for purposes of this action," *id.* at 7, even though he

simultaneously conceded that "the terms of [those contracts] are at present

unknown to Nyambal," *id.* at 2.

 In conjunction with his motion for leave to conduct discovery, Plaintiff

presented proposed interrogatories and document requests directed at the Fund.

JA30-34 (Interrogatories), JA35-38 (Requests for Production).  Although he

attempted to characterize these discovery requests as "carefully controlled and

limited," MTD Opp. 8 (internal quotation marks omitted), the requests in fact seek

to delve well beyond the particular documents—namely the Fund's contracts with

the Security Service (the "Security Service Contract") and the Credit Union (the

"Credit Union Lease")—that he speculated would contain an express waiver of the

Fund's immunities.  *See id.* at 7.  The proposed document requests and

interrogatories call for the Fund to describe and produce "[a]ll documents and

communications" relating to an array of topics, including "the Credit Union's use

or lease of premises located in your headquarters building," JA33, JA37, and "the

Security Firm's provision of security services to the Credit Union and/or the

premises occupied by the Credit Union,"  JA33, JA38.

12

The Fund opposed Mr. Nyambal's request to take such "jurisdictional discovery" based on the same absolute immunities from all forms of judicial process that it relied upon in moving to dismiss the Complaint. *See* Def.'s Reply in Support of Mot. to Dismiss, Dist. Ct. Dkt. No. 13 (Jan. 17, 2013). The Fund explained that its immunities preclude it from being subjected to such discovery, stressing in particular (1) that it had proffered an uncontroverted affidavit from a senior official averring that it had not waived its immunities with respect to Plaintiff's suit and (2) that Plaintiff had offered nothing other than unsubstantiated and implausible speculation to support his request. *Id.*

In addition, because Plaintiff's speculation about waiver had focused on the Security Service Contract and the Credit Union Lease, the Fund also provided the district court with another affidavit, from one of its Senior Counsel, to dispel any doubt that those contracts somehow expressly waived the Fund's immunities with respect to this suit. *See* JA40-42. In direct contradiction to Plaintiff's speculation, this affidavit quoted verbatim provisions in each of those contracts that *expressly disclaim any waiver of the Fund's immunities.* JA41-42. In particular, the affidavit recited the following provision from the Credit Union Lease:

13

Article 28. IMMUNITIES FROM JUDICIAL PROCESS.

28.1 Article IX of the Articles of Agreement of the International Monetary Fund, as incorporated into the laws of the United States and the District of Columbia by the Bretton Woods Agreements Act (22 U.S. Code Section 286h), provides that the International Monetary Fund, its property and its assets, wherever located and by whomsoever held, are immune from every form of judicial process. ***Landlord [the Fund] does not, by virtue of this Lease, waive these immunities, which may only be waived by a decision of the Executive Board of the International Monetary Fund.***

JA41 (emphasis added). The affidavit also quoted a similar provision from the

Security Service Contract:

18.0   IMMUNITIES OF THE INTERNATIONAL MONETARY FUND: TAXES & DISPUTES

Article IX of the Articles of Agreement of the International Monetary Fund, as incorporated into the laws of the United States and the District of Columbia by the Bretton Woods Agreements Act (22 U.S. Code Section 286h), provides that the International Monetary Fund, its property and its assets, wherever located and by whomsoever held, are immune from every form of judicial process…. Accordingly, and notwithstanding anything to the contrary in this Agreement or any documents to which it refers, it is expressly agreed and understood that—

*       *       *

(b) The IMF is immune from all forms of judicial process, including lawsuits and summons in connection therewith; ***the IMF does not waive that immunity in relation to this Agreement.***

JA41-42 (emphasis added).

### D.    The District Court's Grant Of Plaintiff's Request For Jurisdictional Discovery

Despite the Fund's sworn assurances that it had not expressly waived its immunities and its specific refutation of Plaintiff's speculation that the Security Service Contract and Credit Union Lease contain such a waiver, the district court granted his request to propound jurisdictional discovery to the Fund.  JA43.  The district court correctly determined that "pursuant to the [Bretton Woods Agreements Act] and the IOIA, the Fund is immune from every form of judicial process, including discovery."  *Id.*  Nevertheless, it decided that limited jurisdictional discovery "may be proper [if] pertinent facts bearing on the issue of jurisdiction are in dispute."  *Id.*  Without pointing to any particular facts that it deemed to be in dispute, the district court granted the requested discovery "to determine the issue of whether there has been an express waiver of immunity in either of the two relevant contracts."  *Id.*

### E.    Proceedings Following Entry Of The July 2013 Discovery Order

The Fund promptly moved for reconsideration of the discovery order pursuant to Fed. R. Civ. P. 59(e), JA51-53, and protectively noticed an appeal, JA56-58.  Before moving for reconsideration, the Fund voluntarily provided to Plaintiff and the district court complete copies of the Credit Union Lease and the Security Service Contract.  *See* JA52, JA55.  Contrary to Plaintiff's baseless speculation and consistent with the Fund's affidavits, the Fund's submission of the

15

full contracts reconfirmed the absence of any waiver.  *See* SJA1-289.  Plaintiff,

however, continued to press for jurisdictional discovery, claiming that one of the

two contracts (the Credit Union Lease) includes provisions that either contradict its

explicit disclaimer of any waiver, or, alternatively, establish a "framework" under

which such waiver may occur.  *See* Pl.'s Opp. to Mot. for Reconsideration

("Reconsideration Opp."), Dist. Ct. Dkt. No. 26-1 (Aug. 23, 2013) (filed under

seal).  The Fund argued, in turn, that Plaintiff's attempt to conjure a waiver from

one of the contracts was completely meritless.

   The district court *sua sponte* stayed the discovery order pending resolution

of the motion for reconsideration.  JA59.  This Court, in turn, *sua sponte* stayed all

proceedings on the appeal pending the district court's disposition of that motion.

Aug. 12, 2013 Order, D.C. Cir. Dkt. No. 1451249.

   Meanwhile, Plaintiff moved for leave to amend his Complaint to add a

single new paragraph alleging that the Fund had caused him to be barred from

entering the premises of another international organization.  *See* Pl.'s Mem. in

Support of Mot. for Leave to File First Am. Compl. ("Amendment Mem."), Dist.

Ct. Dkt. No. 29 (Nov. 15, 2013).  The amendment did not add any allegations

regarding the Fund's alleged waiver of its absolute immunity from judicial process.

*See id.*; JA64-75.  The Fund opposed that motion on grounds of absolute immunity

16

and futility.  *See* Def.'s Opp. to Motion for Leave to File First Am. Compl., Dist. Ct. Dkt. No. 30 (Nov. 25, 2013).

On February 12, 2014, the district court issued two Minute Orders. The first denied the Fund's motion for reconsideration based upon, *inter alia*, the district court's agreement with Plaintiff that there are "inconsistencies in the contracts" that entitle him to proceed with his proposed discovery demands.  JA62.  The second order granted Plaintiff's motion for leave to amend and denied the Fund's motion to dismiss "as moot."  *See* JA63.  On February 28, 2014, the Fund noticed its appeal from those orders, JA76-77, and on March 19, 2014, the district court stayed its discovery orders pending resolution of the appeals.  JA78.

## SUMMARY OF ARGUMENT

The district court's orders permitting Mr. Nyambal to propound jurisdictional discovery requests to the Fund erroneously invade the Fund's absolute immunities from judicial process.  The Fund's Articles of Agreement and the International Organizations Immunities Act grant the Fund immunity from *every form of judicial process* except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract. Articles of Agreement, Art. IX, § 3; IOIA, 22 U.S.C. § 288a(b).  As the district court recognized in its July 9, 2013 Minute Order, the Fund's immunities include immunity from compulsory discovery.  JA43.

17

Even if there were circumstances in which the Fund properly could be subjected to limited jurisdictional discovery despite its immunities from every form of judicial process, any such circumstances would be, *at most*, exceedingly narrow and would require, *at a minimum*, specific and plausible allegations of an express, applicable waiver. Even in cases involving significantly less protective forms of immunity, such as the exception-laden immunity currently afforded to foreign sovereigns under the Foreign Sovereign Immunities Act ("FSIA"), the availability of jurisdictional discovery must be tightly circumscribed in order to avoid "the evaluation of the immunity itself encroach[ing] unduly on the benefits the immunity was to ensure," *Papandreou*, 139 F.3d at 253, and must be based on "more than conjecture and surmise," *Crist v. Republic of Turkey*, 995 F. Supp. 5, 13 (D.D.C. 1998).

In this case, however, conjecture and surmise—of a highly implausible nature—is all that Plaintiff offered. His initial theory was that the Fund's contracts with the Credit Union and Security Service would, within their four corners, expressly waive the Fund's immunities as to his claims. *See* MTD Opp. 7. He provided no factual basis for that contention. Indeed, he offered no basis to suggest that either contract waived the Fund's immunities from judicial process even with respect to the Fund's contractual counterparties (i.e., the Security Service and the Credit Union). And he certainly identified no basis whatsoever, in

18

fact or logic, for why it might ever have occurred to the Fund to use either of those contracts as a vehicle for expressly waiving its absolute immunities with respect to a suit brought by someone, such as Mr. Nyambal, who is a stranger to the business relationship between the Fund and those counterparties.  In any event, as the Fund demonstrated, first in its affidavits and thereafter through voluntary disclosure of both contracts in their entirety, those contracts do the very opposite of waiving the Fund's immunities: *they expressly reserve the immunities and disclaim any waiver*. *See* JA25-26, JA40-42, SJA37 (Art. 28.1), SJA70 (Art. 18).

After disclosure of the full contracts to Plaintiff and the district court debunked his initial speculation, Plaintiff cast about for some new theory of waiver, but once again his efforts were wholly speculative and illogical.  He conceded that the Credit Union Lease contains a "blanket non-waiver provision," Reconsideration Opp. 9, yet simultaneously asserted that the contracts somehow "raise more questions than they answer," *id*.  In particular, he asserted that one of the two contracts, the Credit Union Lease, contains provisions that contradict the non-waiver provision, *see id.* at 7, but examination of those provisions demonstrates that that assertion is frivolous.  He also asserted, in the alternative, that the contracts somehow "establish…a framework that enables the IMF to waive immunity in the regular course of business."  *Id*. at 6.  But only express waivers can operate to waive the Fund's immunities, and saying there is a "framework"

19

under which an applicable, express waiver *might possibly* occur establishes nothing

more than what is already clear on face of the Fund's Articles Agreement and the

IOIA—under those governing authorities, the Fund *may* waive its immunities "for

the purpose of *any* proceedings or by the terms of *any* contract."  Articles of

Agreement, Art. IX, § 3; IOIA, 22 U.S.C. § 288a(b).  At bottom, once again,

Plaintiff offered nothing but ungrounded, implausible speculation to suggest that

any waiver applicable to his action exists, and in the face of the Fund's affidavits

and complete contract documents showing no waiver, Plaintiff fell far short of

showing any entitlement to any discovery.

 For the foregoing reasons, the district court erred as a matter of law both in

ordering jurisdictional discovery in the first place and in declining to vacate that

order, on reconsideration, after the Fund had voluntarily provided Plaintiff and the

court with complete copies of the contracts on which his waiver arguments were

predicated.  Moreover, it was legal error for the district court to rest its latter order

on the incorrect premise that those contracts contain provisions that are

inconsistent with the contracts' clear and unambiguous disclaimers of any waiver

of the Fund's immunities.

 The district court also erred in denying the Fund's motion to dismiss.  A key

purpose of the Fund's immunities is to shield it from the burdens of litigation.  By

dismissing the Fund's motion to dismiss as moot, apparently based on Plaintiff's

intervening filing of a slightly amended complaint, the district court erroneously exposed the Fund to the very burdens from which it enjoys absolute immunity. This error is especially clear because the amended complaint added only a single new factual paragraph that did not even address, much less undermine, the proposition that the Fund is immune from Plaintiff's suit.

## STANDARD OF REVIEW

As the issues before the Court all turn on application of the Fund's immunities from all forms of judicial process, the standard of review is *de novo*. *See McKesson HBOC, Inc. v. Islamic Republic of Iran*, 271 F.3d 1101, 1105 (D.C. Cir. 2001), *vacated in part on other grounds*, 320 F.3d 280 (D.C. Cir. 2003) (holding that "entitlement to sovereign immunity raises questions of law reviewable *de novo*."); *Kirkham v. Societe Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005 (holding that district court's denial of a motion to dismiss on sovereign immunity grounds will be reviewed *de novo*) (citing *Kilburn*, 376 F.3d at 1127)). In particular, the *de novo* standard applies to review of the district court's discovery orders because whether the Fund is immune from jurisdictional discovery and whether the district court failed to apply the correct legal standard are legal questions.  *See United States v. Deloitte LLP*, 610 F.3d 129, 134 (D.C. Cir. 2010); *Yousuf v. Samantar*, 451 F.3d 248, 251 (D.C. Cir. 2006).

This appeal also involves the district court's interpretation of two contracts between the Fund and third-party businesses.  This Court reviews *de novo* district courts' resolution of questions of contract interpretation.  *Essex Ins. Co. v. Doe ex rel. Doe*, 511 F.3d 198, 200 (D.C. Cir. 2008).

## ARGUMENT

**I.     THE DISTRICT COURT'S ORDERS PERMITTING PLAINTIFF TO PROPOUND JURISDICTIONAL DISCOVERY REQUESTS TO THE FUND VIOLATE THE FUND'S ABSOLUTE IMMUNITIES FROM JUDICIAL PROCESS**

As the district court correctly recognized, under the terms of both the Fund's Articles of Agreement and the IOIA, the Fund is absolutely immune, absent an express waiver, "from every form of judicial process, including discovery."  JA43.  Nevertheless, the district court authorized Plaintiff to propound jurisdictional discovery requests to the Fund that purport to explore whether it has waived its immunities for purposes of this case.  As demonstrated below, this was plain legal error.

In order to ensure that organizational and governmental immunities are not routinely invaded by litigants seeking to evade these immunities, this Court and other courts have consistently made clear that jurisdictional discovery is available from immune entities, if at all, only in narrow circumstances, where a plaintiff offers specific and plausible allegations showing a genuine and material dispute regarding the presence or applicability of an exception to the immunity defense.  In

22

the present case, where the only possible exception to the Fund's absolute

immunities is "express waiver," where the Fund submitted authoritative affidavits

demonstrating the absence of any applicable express waiver, and where the

Plaintiff offered only groundless and far-fetched speculation regarding the possible

existence of a waiver, the lower court's authorization of "jurisdictional discovery"

was plainly erroneous.

> **A.    Under Its Articles Of Agreement And The IOIA, The Fund Is Absolutely Immune From All Forms Of Judicial Process, Including Compulsory Discovery, Absent An Express Waiver**

The Articles of Agreement provide that "[t]he Fund, its property and its

assets, wherever located and by whomsoever held, shall enjoy immunity from

*every form of judicial process* except to the extent that it *expressly waives* its

immunity for the purpose of any proceedings or by the terms of any contract."

Articles of Agreement, Art. IX, § 3 (emphasis added); *see Mendaro v. World Bank*,

717 F.2d 610, 618 n.53 (D.C. Cir. 1983) ("[T]he Fund's Articles of Agreement

absolutely reserve its immunity from suit.").  The Articles have the "full force and

effect" of U.S. law through their codification in the Bretton Woods Agreements

Act and are a binding treaty of the United States.  *See* 22 U.S.C. § 286h.  As with

any international agreement to which the United States is a party, the Fund's

Articles are part of the "supreme Law of the Land" and have the same force as any

statute.  U.S. Const. art. VI, cl. 2; *see Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 314

(1829) (Marshall, C.J.); *McKesson Corp. v. Islamic Republic of Iran*, 539 F.3d 485, 488 (D.C. Cir. 2008).[7]

The IOIA independently grants the Fund absolute immunity from suit and every other form of judicial process, subject again to only express waiver by the Fund.  It provides that designated entities, which by Executive Order include the Fund,[8] "enjoy the same immunity *from suit and every form of judicial process* as is enjoyed by foreign governments, except to the extent that such organizations may *expressly waive* their immunity for the purpose of any proceedings or by the terms of any contract."  22 U.S.C. § 288a(b) (emphasis added).  Dating back to its seminal decision regarding the scope of the IOIA in *Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998), this Court has repeatedly held that the immunity afforded under the IOIA is "absolute."  *See id.* at 1341 (breadth of IOIA immunity was fixed at time of the Act's enactment, "when immunity of foreign sovereigns was absolute"); *Dujardin v. Interntional Bank for Reconstr. & Dev.*, 9

---

[7]      Recognition of, and respect for, the immunities provided under the Articles are an express obligation of the United States' membership in the IMF.  *See* Articles of Agreement, Art. IX, § 10.

[8]      *See* Exec. Order 9751, 11 Fed. Reg. 7713 (July 11, 1946).

F. App'x 19, 20 (D.C. Cir. 2001); *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 F. App'x 13, 15 (D.C. Cir. 2008).[9]

This Court has recognized the "fundamental importance" of the immunities afforded to international organizations such as the Fund:

> The strong foundation in international law for the privileges and immunities accorded to international organizations denotes the fundamental importance of these immunities to the growing efforts to achieve coordinated international action through multinational organizations with specific missions….

> [T]he very structure of an international organization, which ordinarily consists of an administrative body created by the joint action of several participating nations, requires that the organization remain independent from the intranational policies of its individual members.

*Mendaro*, 717 F.2d at 615-616. These immunities are "rooted in the need to protect international organizations from unilateral control by a member nation over the activities of the international organization within its territory." *Id.* at 615.

The most basic consequence of the Fund's twin absolute immunities is that, absent an express waiver by the Fund, any lawsuit brought in court against the

---

[9]     Even if the IOIA and the Fund's Articles were understood to provide different degrees of immunity, the Fund would enjoy the benefits of both. The Executive Order designating the IMF as a public international organization for purposes of the IOIA stated that it was "not intended to abridge in any respect privileges and immunities which such organizations have acquired or may acquire by treaty or Congressional action." Exec. Order 9751, 11 Fed. Reg. 7713 (July 11, 1946); *see also Restatement (Third) of Foreign Relations Law* § 467(2) & cmt. F, at 493, 496 (1987).

Fund must be dismissed.  Thus, in the only reported lawsuits brought against the Fund in American courts, federal district courts dismissed the suits at the threshold based upon the Fund's immunities.  *Polak v. International Monetary Fund*, 657 F.Supp. 2d 116 (D.D.C. 2009) (dismissing former Fund employee's personal injury action for lack of subject matter jurisdiction due to Fund's absolute immunities); *Morgan v. International Monetary Fund*, Civ. No. 95-0143, 1995 WL 755105, at *2 (D. Idaho Oct. 6, 1995) (granting Fund's motion to dismiss "because it is immune from judicial process"); *see also Kissi v. Laroisiere*, No. 82-1267 (D.D.C. June 23, 1982) (dismissing employment discrimination suit against Fund's Managing Director based on the Fund's organizational and official immunities).

The Fund's absolute immunities shield it from much more than only judicial impositions of liability and court pleadings, such as civil complaints, that seek such impositions.  Rather, these immunities extend to all manner of "judicial process," including discovery requests.  The plain language of both Article IX, § 3 of the Articles of Agreement and § 288a(b) of the IOIA—each of which expressly establishes immunity "from *every form* of judicial process," compels this construction.[10]  Compulsory discovery, of course, is a classic form of "judicial process."  *Polak*, 657 F. Supp. 2d at 122 (citing *Foremost-McKesson, Inc. v.*

---

[10]     The IOIA is especially clear on this point, as it spells out that its immunity extends to "suit *and every form of judicial process*."  22 U.S.C. § 288a(b) (emphasis added).

*Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990)).  Moreover, construing the Fund's immunities as encompassing discovery requests conforms with the more general doctrine, recognized by this Court with respect to various types of immunity (including under the IOIA) that "immunity, where justly invoked, properly shields defendants 'not only from the consequences of litigation's results but also from the burden of defending themselves.'"  *Tuck v. Pan Am. Health Org*., 668 F.2d 547, 549 (D.C. Cir. 1981) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)); *see also In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998) (FSIA immunity); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C. Cir. 1996) (same); *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189-1190 & n.11 (10th Cir. 2010) (tribal sovereign immunity).

Following these principles, this Court and other courts have routinely dismissed cases against international organizations on immunity grounds *without permitting any discovery.  See, e.g.*, *Tuck*, 668 F.2d at 549 & n.4 (affirming dismissal of action against Pan American Health Organization on immunity grounds and expressly declining to "first conduct[] a limited factual inquiry"); *Inversora Murten*, 264 F. App'x at 15 (affirming dismissal of default judgment against World Bank on immunity grounds and noting that because the only potential source of waiver could be the Bank's Articles, "no further discovery is

27

warranted"); *Atkinson*, 156 F.3d at 1338-1342 (holding that the Inter-American

Development Bank was immune under the IOIA and had not waived its immunity,

referencing only the allegations in the complaint and public documents, and citing

no discovery); *Polak*, 657 F. Supp. 2d at 121-122 (dismissing personal injury suit

against Fund and rejecting plaintiff's request for jurisdictional discovery regarding

alleged waiver of immunity).  The Fund is not aware of any case, and Plaintiff to

date has cited none, in which any court has authorized any discovery against the

Fund or, for that matter, against any other international organization that enjoys

immunity under the IOIA and/or a foundational treaty containing language akin to

Article IX, § 3 of the Fund's Articles of Agreement.

     In addition to the *general* grants of absolute immunity from "every form of

judicial process" described above, both the Articles of Agreement and the IOIA

also contain other, more specific provisions—focused particularly on protecting

the organization's files and communications— that erect further barriers to any

efforts, such as civil discovery requests, to obtain documents or other information

from the Fund.  Article IX, § 5, entitled "Immunity of archives," provides: "The

archives of the Fund shall be inviolable."  The IOIA establishes identical

protection.  22 U.S.C. § 288a(c) ("The archives of international organizations shall

be inviolable").  In a similar vein, Article IX, § 7 of the Articles of Agreement,

entitled "Privilege for communications," states that "[t]he official communications

28

of the Fund shall be accorded by members the same treatment as the official

communications of other members."[11]  The Fund cited these protections in the

proceedings below, but the district court's orders made no mention of them.

These additional provisions stand as further bulwarks against compelling the

Fund to respond to Plaintiff's proposed jurisdictional discovery requests.  *See*

*Mendaro*, 717 F.2d at 615 ("The premises, archives, and communications of

international organizations are shielded from interference by member states.").

Courts construing similar provisions in international treaties and agreements have

held that they block compulsory discovery.  For example, in *Taiwan v. United*

*States Dist. Court for N. Dist. of Cal.*, 128 F.3d 712 (9th Cir. 1997), the Ninth

Circuit construed a similar provision in an agreement between the United States and

Taiwan—one stating that "[t]he archives and documents of the sending counterpart

organization shall be inviolable"—as "prevent[ing] a court from directly

compelling production of…documents" in the possession of a diplomatic office of

Taiwan.  *Id.* at 718; *see also Keeney v. United States*, 218 F.2d 843, 849 (D.C. Cir.

1954) (reversing United Nations employee's conviction for contempt of Congress

because, "[i]n so far as the answer [sought by a congressional subcommittee]

depends upon data in the files of the United Nations or upon information derived

---

[11]      As noted above, sections two through nine of Article IX of the Fund's
Articles of Agreement are codified into U.S. law by the Bretton Woods
Agreements Act.  *See supra* p. 8.

from those files, it was privileged by the Charter and the Staff Rules and could not legally be revealed."); *Liberian E. Timber Corp. v. Government of Republic of Liberia*, 659 F. Supp. 606, 610 & n.5 (D.D.C. 1987) (observing that provision of Vienna Convention providing that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be" would make taking discovery from a Liberian mission "a difficult task at best").

Aside from the multiple layers of federal law that generally immunize the Fund from every form of judicial process and that specifically shield it from compulsory discovery, there also is a practical consideration that should give any court serious pause before ordering the Fund to respond to any "jurisdictional discovery" requests:  Because the Fund's immunities are absolute in nature and may be overcome by only an "express waiver," any scenario in which such discovery might theoretically make a difference is extraordinarily far-fetched.  This is so for two inter-related reasons.

*First*, an "express waiver" of absolute immunity necessarily reflects an affirmative decision by an immune entity to subject itself to a court's adjudication of a particular claim or type of claim.[12]  Therefore, for jurisdictional discovery

---

[12]      At the Fund, such waivers may occur only through affirmative action of the Fund's Executive Board.  JA25, JA41 ("Landlord does not, by virtue of this Lease, waive these immunities, which may only be waived by a decision of the Executive Board of the International Monetary Fund."), SJA37 (same).  The Executive Board

against the Fund to ever matter, it would have to be true that the Fund had

previously made an *express* waiver of its immunities for the claimant's (or a class

of claimants') special benefit, only to later *falsely* deny having done so (including,

as here, in formal affidavits submitted to a court). But Plaintiff has made no

suggestion that there is any precedent or proclivity for the Fund to act in such a

strange and deceptive on-again, off-again manner with respect to its legal

immunities.

*Second*, for such discovery to matter, it also would have to reveal some

information that the claimant did not already know or that was not otherwise

readily available to him without discovery. But a claimant who is the beneficiary

of an express waiver ordinarily will *know* about and be able to prove the waiver

without need for discovery, either because the waiver was made openly or in

public (such as if the waiver is contained in the organization's public documents[13]

or if the otherwise immune entity expressly informs a court that it has consented to

---

of the Fund comprises the Fund's Managing Director and 24 Executive Directors.
International Monetary Fund, IMF Executive Directors and Voting Power,
http://www.imf.org/external/np/sec/memdir/eds.aspx (last visited May 2, 2014)
("IMF Executive Directors and Voting Power").

[13]     For example, the Articles of Agreement of the International Bank for
Reconstruction and Development, unlike the Fund's, include provisions allowing
actions to be brought against it. *Mendaro v. World Bank*, 717 F.2d 610, 617 (D.C.
Cir. 1983) (noting that "Article VII section 3 [of the Bank's Articles of
Agreement] does expressly waive immunity, but the scope of its limitation on
immunity is unclear").

the court's jurisdiction with respect to a particularly controversy[14]) or because the

claimant himself was advised of the express waiver when it was made (such as by

being a signatory to a contract containing the express waiver).  After all, entities

that expressly waive absolute immunity ordinarily have a purpose for doing so, and

at least usually that purpose is attained by letting the beneficiaries know about the

waiver when it is made.

Thus, while it may not strain one's imagination to see how jurisdictional

discovery may sometimes be efficacious in suits against entities whose immunities

are less than absolute or subject to waivers that are not "express," that is not so in a

suit against the Fund.  Jurisdictional discovery against the Fund necessarily aims at

unearthing facts showing that the Fund made an express waiver for the benefit of a

particular claimant or class of claimants, and for the particular type of claim being

asserted by the claimant, but without there being any publicly available record of

that waiver, without the claimant being made aware of the express waiver at the

---

[14]     In the analogous context of States' immunity from suit under the Eleventh
Amendment, only such clear, open and notorious actions can operate as an
effective waiver.  *See College Sav. Bank v. Florida Prepaid Postsecondary Educ.
Expense Bd.*, 527 U.S. 666, 675-676 (1999) ("Generally, we will find a waiver
either if the State voluntarily invokes our jurisdiction, or else if the State makes a
'clear declaration' that it intends to submit itself to our jurisdiction." (internal
citation omitted)); *Consejo de Salud de la Comunidad de la Playa de Ponce, Inc. v.
Gonzalez-Feliciano*, 695 F.3d 83, 104 (1st Cir. 2012) ("[A] State only waives its
immunity under the Eleventh Amendment when it voluntarily entreats a federal
court to adjudicate its rights."), *cert denied*, 134 S. Ct. 54 (2013).

time it was made or thereafter, and with the Fund later falsely denying that that the express waiver was ever made.  The extreme implausibility of such a scenario itself militates against permitting jurisdictional discovery against the Fund.

The foregoing legal and common sense analysis would warrant this Court holding, as a matter of law, that the Fund should *never* be subjected to compelled civil discovery, "jurisdictional" or otherwise, absent unequivocal proof, obtained without benefit of discovery, that the Fund has made an express and applicable waiver of its absolute immunities and other protections.  In this case, however, the Court need not reach that issue because, as demonstrated below, Plaintiff's effort to show an entitlement to jurisdictional discovery fell far below any standard that would apply even if one assumes, for the sake of argument, that there may be circumstances in which the Fund may be subjected to compulsory jurisdictional discovery.

> **B.      If They Exist At All, The Circumstances In Which The Fund May Properly Be Subject To Jurisdictional Discovery Are Very Narrow And Require, At A Minimum, Specific And Plausible Allegations Of An Express And Applicable Waiver**

In order to avoid the Fund's absolute immunities from judicial process, Plaintiff would have to show that the Fund had made an *express* waiver of those immunities that is applicable to his lawsuit.  *See* Articles of Agreement, Art. IX, § 3; 22 U.S.C. § 288a(b).  There is nothing vague or ambiguous about this requirement.  In particular, an operative waiver may not be *implied—e.g.*, conjured

from a course of conduct or inferred from an unrelated prior waiver.  *See Polak*, 657 F. Supp. 2d at 122 ("[E]ven if discovery were to reveal prior, unrelated instances in which the defendant waived its immunity, such discovery would not bear on whether the defendant waived its immunity in this case because neither the Articles of Agreement nor the IOIA permits waiver by implication.")

As previously stated, the Fund is unaware of any case in which either the Fund or any other international organization enjoying similar absolute immunities has ever been subjected to discovery to explore whether such immunity has been expressly waived.  This Court has never had occasion to consider the question.  The district court in *Polak*, citing cases involving more restricted forms of immunity, suggested that there may be exceptional circumstances in which the Fund could be subjected to jurisdictional discovery.  657 F. Supp. 2d at 121.  But even in that case, no discovery was permitted, and the Fund's threshold motion to dismiss was granted due to the "[a]bsen[ce] [of] a specific, well-founded allegation that an express waiver exists."  *Id.* at 122.

As appellate courts have recognized in cases involving the significantly more limited, exception-prone immunity accorded in recent decades to foreign sovereigns under the FSIA,[15] a tension exists between "permitting discovery to

---

[15]     Unlike the Fund's Articles and the IOIA, which establish that the Fund is immune unless it expressly waives that immunity, the FSIA contains numerous

substantiate exceptions to foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992); *see also El-Fadl*, 75 F.3d at 671 (recognizing, in FSIA context, that jurisdictional discovery "would frustrate the significance and benefit of entitlement to immunity from suit" (internal quotation marks omitted)), *abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305 (2010); *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) ("Where a plaintiff seeks to initially establish that the court has subject matter jurisdiction over a sovereign, discovery and immunity are almost invariably intertwined."), *cert. granted*, 134 S. Ct. 895 (2014).

For this reason, this Court and other courts have held, again in the less protective FSIA context, that jurisdictional discovery must be strictly limited in order to avoid "the evaluation of the immunity itself encroach[ing] unduly on the

---

exceptions to the immunity of a foreign state, including permitting waiver by "implication." *See* 28 U.S.C. §§ 1604, 1605, 1607 (immunity exceptions under FSIA); *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000) ("Under the FSIA a foreign state is immune from the jurisdiction of both the federal and the state courts, except as provided by international agreements, by nine specifically enumerated exceptions, and by certain other exceptions relating to counterclaims in actions brought by the foreign state itself." (internal citations omitted)). As the *Polak* court observed, although "implied waiver may serve as a limitation on immunity" under the FSIA, in considering requests for jurisdictional discovery against the Fund, courts must "exercise additional caution" because the Fund can be deprived of its immunities only by an "express waiver." 657 F. Supp. 2d at 121-122 (citing FSIA, 28 U.S.C. § 1605(a)).

benefits the immunity was to ensure." *Papandreou*, 139 F.3d at 253. Accordingly,
"[i]n order to avoid burdening … [a foreign sovereign] that proves to be immune
from suit, … jurisdictional discovery should be carefully controlled and limited."
*Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).
*See also EM Ltd.*, 695 F.3d at 210.

Before permitting jurisdictional discovery against foreign sovereigns or
other entities that enjoy less protective immunities than those afforded to the Fund,
federal courts have consistently required plaintiffs to make a specific, non-
speculative and plausible showing that there is a genuine dispute regarding the
defendant's entitlement to immunity. In a recent FSIA case in the Second Circuit,
for example, the court unanimously affirmed a district court's denial of the
plaintiff's request for jurisdictional discovery based on the rule that, "in the FSIA
context, discovery should be ordered circumspectly *and only to verify allegations
of specific facts crucial to an immunity determination*." *EM Ltd. v. Republic of
Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) (emphasis added; internal quotation
and citations omitted). The Fifth Circuit adhered to the same rule in unanimously
reversing a district court's grant of jurisdictional discovery against a foreign
sovereign, stating that jurisdictional discovery is permissible in an FSIA case "*only
to verify allegations of specific facts* crucial to an immunity determination."

36

*Arriba Ltd.*, 962 F.2d at 534 (emphasis added).[16]  In the same vein, and again in the FSIA context, courts have ruled that requests for jurisdictional discovery must be denied if they are premised on "nothing more than conjecture and surmise in support of [the plaintiffs'] jurisdictional theory." *Crist v. Republic of Turkey*, 995 F. Supp. 5, 13 (D.D.C. 1998).  *See also Millicom Int'l Cellular, S.A. v. Republic of Costa Rica*, Civ. No. 96-315, 1997 WL 527340, at *4 (D.D.C. Aug. 18, 1997) (to obtain jurisdictional discovery in FSIA context, plaintiff must present "non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis" of the immunity issue).

This Court's own decisions regarding the availability of jurisdictional discovery, even in the less protective FSIA context, are in harmony with the principle articulated in cases from other circuits such as *EM Ltd.* and *Arriba Ltd.* For example, in *El-Fadl*, this Court held that the plaintiff was not entitled to jurisdictional discovery because the defendant had proferred evidence showing his

---

[16]     The Fifth Circuit recently employed a similarly strict standard in denying a request to take jurisdictional discovery in *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013), a suit brought against the United States under the Federal Tort Claims Act.  The plaintiffs in that case alleged "that there may be a government policy concerning" the allegedly tortious conduct, which if true would have placed the conduct at issue beyond the FTCA's discretionary-function exemption and negated the government's sovereign immunity defense. *Id.* at 264.  The Fifth Circuit affirmed the district court's denial of the plaintiffs' request to take jurisdictional discovery to search for such a policy, emphasizing that the plaintiffs had "*alleged no well-pleaded facts or evidence* to refute the government's assertion to the district court that no such policy exists." *Id.* (emphasis added).

entitlement to immunity under the FSIA and the plaintiff had failed to make "any showing" to the contrary.  75 F.3d at 671.  Similarly, in *Belhas v. Ya'alon*, 515 F.3d 1279 (D.C. Cir. 2008), this Court affirmed the district court's denial of jurisdictional discovery due to the "absence of any showing by [plaintiff]" in rebuttal to an unsworn letter from an Israeli diplomat asserting that the conduct at issue was "sovereign action" of the State of Israel and therefore within the scope of FSIA immunity.  *Id.* at 1290 (quoting *El-Fadl*, 75 F.3d at 671).

This sensible principle— that a proponent of jurisdictional discovery from an immune entity must, at a minimum, present specific, non-conclusory, non-speculative allegations that are crucial to the immunity determination—is bolstered by this Court's recent decision in *Jacobs v. Vrobel*, 724 F.3d 217 (D.C. Cir. 2013). *Jacobs* applied the Supreme Court's generally applicable *Iqbal-Twombly*[17] pleading standard to a plaintiff's effort to rebut a governmental defendant's claim of sovereign immunity.  Under that standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Moreover, "conclusory statements" are not enough; rather a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S.

---

[17]     *See Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

at 678.  Most importantly, a plaintiff cannot survive a motion to dismiss by alleging "facts that are merely consistent with a defendant's liability and demonstrate only a possibility, *but not the plausibility*, of relief." *RSM Production Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678 (emphasis added) (internal quotation marks omitted)), *cert. denied*, 133 S. Ct. 870 (2013).

*Jacobs* involved a tort suit by a federal employee against her supervisor. The United States removed the case to federal court under the Westfall Act,[18] thus substituting the United States as the defendant, and then moved to dismiss the suit as not falling within the Federal Tort Claims Act's exceptions to sovereign immunity.[19]  724 F.3d at 219-20.  The government's immunity defense turned on whether all of the supervisor's allegedly tortious acts were within the scope of her federal employment, a fact the government had supported with a certification from the Attorney General (in accordance with Westfall Act protocol) and an affidavit from the supervisor.  *Id.* at 220.  The plaintiff sought to take jurisdictional

---

[18]     Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified as amended in relevant part at 28 U.S.C. § 2679).

[19]     "The FTCA grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." *Sloan v. Department of Housing & Urban Dev*., 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674). "The grant of jurisdiction and waiver of immunity are subject to a number of express exceptions."  *Id.* (citing 28 U.S.C. § 2680).

discovery aimed at trying to rebut the certification, but the district court denied that request and dismissed the suit based on sovereign immunity.  *Id.* at 220 & 224 n.2. This Court unanimously affirmed those rulings, holding that the *Iqbal-Twombly* standard governed the determination of "whether the plaintiff has alleged facts to rebut the [government's] certification," and that the plaintiff was not entitled to discovery because she had raised "no factual issues…that must be resolved."  *Id.* at 221, 224 n.2.

In sum, if it is ever permissible for a litigant suing the Fund to be authorized to obtain jurisdictional discovery from the Fund in an effort to contradict the Fund's own showing that it has not expressly waived its absolute immunities for purposes of the suit, the litigant must, *at a minimum*, present specific, non-conclusory, non-speculative and plausible allegations demonstrating a genuine dispute regarding whether the Fund has made an applicable express waiver.  As shown in the next section, Mr. Nyambal did not come close to meeting this requirement.

### C.    The District Court Erred In Ordering Jurisdictional Discovery Based On Plaintiff's Purely Speculative, Implausible And Legally Flawed Assertions Regarding Waiver

The district court issued two orders directing the Fund to respond to Plaintiff's discovery requests.  The first issued when the district court simultaneously had before it the Fund's motion to dismiss and Plaintiff's motion for a stay and authorization to conduct jurisdictional discovery; the second issued after

40

the Fund had both (1) voluntarily produced to Plaintiff (and submitted to the court) complete copies of the two contracts (the Credit Union Lease and the Security Service Agreement) that Plaintiff had claimed would contain a pertinent waiver and (2) moved for reconsideration of the first order.  At the time of *each* order, the proposition being advanced by Plaintiff—that the Fund *might* have expressly waived its immunities with respect to his suit—was both *utterly speculative* and *entirely implausible*.  Nevertheless, on each occasion, the district court directed the Fund to respond to Plaintiff's discovery requests, which seek extensive documentation and information about the Fund's dealings with the Credit Union and the Security Service.  Based on the legal principles outlined above in parts I.A and I.B, each order was erroneous as a matter of law, and each order itself contravened the same absolute immunities that were the subject of the Fund's motion to dismiss.

### 1.     The first discovery order was erroneously granted based on Plaintiff's unsubstantiated and far-fetched speculation

The Fund supported its motion to dismiss with an affidavit that authoritatively and dispositively addressed the single threshold question that governs this controversy: whether the Fund had expressly waived its immunities from Plaintiff's tort suit.  That affidavit, from a senior Fund official, stated:  "The Executive Board of the Fund has not waived or authorized the waiver of the Fund's immunity from judicial process with respect to [this] litigation, with respect to

41

personal injury suits generally, or by the terms of any contract with Plaintiff Eugene Nyambal." JA25-26. This was precisely the type of submission that has been sufficient to terminate prior litigation against the Fund, *see Polak*, 657 F. Supp. 2d 116, 122 (D.D.C. 2009), and against other entities that enjoy similar or even lesser forms of immunity, *see, e.g.*, *Belhas*, 515 F.3d at 1290 (dismissing suit against individual claiming immunity under FSIA based on unsworn letter from Israeli diplomat).

Plaintiff's response to the Fund's non-waiver affidavit could hardly have been more speculative or less plausible. He asserted that "that the terms of the contracts between and among the IMF, the Credit Union, and the security firm will establish an express waiver of the IMF's immunity for purposes of this action," MTD Opp. 7, even though he conceded that "the terms of [those contracts] are at present unknown to Nyambal," *id.* at 2. His theory seemed to be that because it is *possible*, in his view, that those contracts would contain a relevant waiver, he should be permitted to conduct discovery to test whether they in fact do so, notwithstanding an affidavit from the Fund stating the opposite.

That approach by Plaintiff was fatally flawed for at least two fundamental reasons. *First,* of course it is *possible* for the Fund to expressly waive its immunities through any contract to which it is a party. Indeed, both the Articles of Agreement and the IOIA explicitly contemplate the possibility of the Fund doing

42

so "by the terms of any contract."  Articles of Agreement, Art. IX, § 3; 22 U.S.C.

§ 288a(b).  But the mere fact that an express waiver is legally possible cannot be a

sufficient basis to obtain jurisdictional discovery from the Fund.  If it were, the

Fund would be subject to jurisdictional discovery in every case.

 *Second*, and equally problematic, even assuming that the Credit Union Lease

or the Security Service Agreement did contain an express waiver of *some sort*,

Plaintiff offered no logical reason to suggest why or how any such express waiver

would encompass *his* tort claims.  Ordinarily, if an express waiver of immunities is

included in a contract between an immune entity and a third party, the beneficiary

of that waiver is the immune entity's contractual counterparty or someone whose

interests are aligned with the counterparty—with the waiver having served as an

inducement for the counterparty to enter the contract and providing a corresponding

benefit to the immune entity.  *See Mendaro*, 717 F.2d at 617 ("[I]it is likely that

most organizations would be unwilling to relinquish their immunity without

receiving a corresponding benefit which would further the organization's goals.

Thus, most waivers are probably effected when an insistence on immunity would

actually prevent or hinder the organization from conducting its activities.").  Here,

however, Plaintiff is a stranger to the Fund's contracts with the Credit Union and

the Security Service.  For this reason, his notion that either contract would contain a

43

waiver for *his* benefit—a waiver that would permit him to assert against the Fund tort claims of the type set out in his Complaint—is, to say the least, far-fetched.

That state of the record—an authoritative affidavit from the Fund countered by only rank and implausible speculation from Plaintiff—required the district court to dismiss the Complaint forthwith, without permitting any discovery.  But before the district court issued its first order authorizing discovery, the Fund went further.  In conjunction with its reply in support of its motion to dismiss and its opposition to Plaintiff's motion for leave to conduct discovery, the Fund submitted a second affidavit, from its Senior Counsel.  This affidavit recited *verbatim* the full text of provisions from both the Credit Union Lease and the Security Services Agreement that state unequivocally that neither contract waives any of the Fund's immunities.  JA40-42.  In particular, this affidavit averred that the Credit Union Lease includes an article entitled "IMMUNITIES FROM JUDICIAL PROCESS," which states as follows:

> [T]he International Monetary Fund, its property and assets, wherever located and by whomsoever held, are immune from every form of judicial process.  ***Landlord does not, by virtue of this Lease, waive these immunities, which may only be waived by a decision of the Executive Board of the International Monetary Fund***.

JA41 (emphasis added).  The affidavit similarly averred that the Security Service Agreement includes an article entitled "IMMUNITIES OF THE

INTERNATIONAL MONETARY FUND: TAXES & DISPUTES," which states

as follows:

> [T]he International Monetary Fund, its property and assets, wherever located and by whomsoever held, are immune from every form of judicial process. ***Accordingly, and notwithstanding anything to the contrary in this Agreement…[t]he IMF is immune from all forms of judicial process, including lawsuits and summons in connection therewith; the IMF does not waive that immunity in relation to this agreement.***

JA41-42 (emphasis added). Thus, even though the Fund had no need or obligation

to do so, it voluntarily provided the district court with further assurance that

Plaintiff's speculation regarding an applicable express waiver supposedly existing

in these contracts was wholly unfounded.

The district court, however, seemed to fault the Fund for submitting only

verbatim quotations of the two contracts' explicit non-waiver provisions rather

than the full contracts themselves. JA43. It stated that "Mr. Patterson [the Fund's

second affiant] cites to specific language in both agreements which purportedly

establishes that the Fund has not waived immunity, but he has not attached the

specific agreements to his affidavit." *Id*. On this basis, the district court

authorized Plaintiff to proceed with his proposed discovery "to determine the issue

of whether there has been an express waiver of immunity in either of the two

relevant contracts." *Id.* But this was plain legal error: even if the Fund had not

provided the court with the explicit non-waiver language from the contracts,

45

Plaintiff had still fallen far short of making any showing that could entitle him to propound jurisdictional discovery demands to the Fund. The second affidavit quoting the contracts' non-waiver provisions was simply another nail in the coffin, though not a necessary one.

> **2.    The second discovery order erroneously credited Plaintiff's claim that the contracts are inconsistent on the subject of waiver of immunities**

Although the Fund immediately noticed a protective appeal from the erroneous July 9, 2013 minute order, it also gave the district court another opportunity to reach a legally correct result. The Fund voluntarily provided to the court and Plaintiff—in their entirety—the two contracts on which Plaintiff had fixated and moved for reconsideration. JA51-53, JA55. In doing so, the Fund provided the Court with further, dispositive proof that Plaintiff's implausible speculation—that these contracts, include terms that waive the Fund's immunities from his suit—is completely unfounded.[20]

Even after receiving complete copies of the contracts, Plaintiff still continued to press for compulsory jurisdictional discovery. In some respects, he

---

[20]     In fact, based on the district court's July 9, 2013 minute order, voluntarily providing Plaintiff with complete copies of the Credit Union Lease and Security Service Agreement, in and of itself, should have obviated any need for compulsory jurisdictional discovery. In that order, the district court identified only a single issue to be probed by discovery: "whether there has been an express waiver *in either of the two relevant contracts*." JA43 (emphasis added).

backed away from his previous position that the contracts themselves would reflect an applicable waiver, asserting instead that perhaps the Fund might somehow have made an applicable waiver of its immunities during the "course of performance" of the contracts.  Reconsideration Opp. 7.  That, however, was merely more—and even more extenuated—speculation of the sort the district court should have rejected from the outset.  Plaintiff also argued that the contracts, particularly the Credit Union Lease, contain provisions that either "establish a specific waiver, or, at least, a framework that enables the IMF to waive immunity."  *Id*.  But, as explained below, the contract provisions to which Plaintiff pointed plainly do not reflect *any* waiver of the Fund's immunities from *any* suit—much less one applicable to the present lawsuit—nor do they contradict or conflict with the contracts' direct and unambiguous *non-waiver* provisions.

    Even in the face of the expanded record that included full copies of the two contracts, the district court nevertheless issued a second minute order, denying the Fund's motion for reconsideration and confirming the directive that the Fund respond to Plaintiff's discovery requests.  JA62.  In doing so, the district court said that it "agree[d]" with Plaintiff  that there are "various inconsistencies in the contracts" and that the contracts therefore do not "resolve the jurisdictional questions Plaintiff has raised."  *Id.*  As explained further below, this was wrong as a matter of law and compounded the district court's prior error.

This further minute order did not identify the "various inconsistencies" that the district court "agree[d]" were present "in the contracts." *See id.* Presumably, the district court was referring to two provisions of the Credit Union Lease—Article 13.1 and Article 15.2— that Plaintiff had argued are in conflict with Article 28.1 of the Lease, which Plaintiff himself concedes is a "blanket *non-waiver* provision." Reconsideration Opp. 9 (emphasis added). But an examination of those provisions demonstrates that they have nothing at all to do with *any* waiver of the Fund's immunities from judicial process—much less an express waiver that would benefit Plaintiff—and that they therefore do not conflict with the Lease's clear and direct *disclaimer* of any waiver.

> **a.** **Article 13.1 of the Credit Union Lease is not inconsistent with the Lease's clear disclaimer of waiver**

Article 13.1 of the Lease, which is entitled "LIMITATIONS OF LIABILITY; INSURANCE," reads as follows:

> 13.1   Landlord's Liability. Landlord shall not be liable for any personal injury to, or damage to the personal property of, Tenant, Tenant's employees, agents, business invitees, licensees, customers, clients, family members, guests or trespassers, arising from the use, occupancy and condition of the Premises or the Building, unless such personal injury or damage to property resulted solely from the negligence or willful misconduct of the Landlord, its agents or employees.  Tenant shall, at its sole cost, carry and keep in full force and effect at all times during the course of the Lease, the following insurance coverage.

SJA22.  As is clear from its terms, this provision *limits* the circumstances in which the Fund might have liability to the Credit Union, as its contractual counterparty, arising from circumstance in which the Credit Union or a third person might suffer injury or damage on the leased premises.  It says nothing whatsoever about the Fund agreeing to subject itself to any suit in court, much less a suit brought against the Fund by someone like Plaintiff, who is not even a party to the Lease.

In the district court, Plaintiff seized on Article 13.1's "unless" clause as indicating a pertinent waiver of the Fund's immunities, but that is clearly wrong. That clause merely carves out a narrow situation in which Article 13.1's general limitation of the Fund's potential liability does not operate to preclude the Fund from being liable to the Credit Union with respect to injuries or damages suffered by the Credit Union or third parties on the leased premises.  The carve-out out applies when the injury or damage "resulted solely from the negligence or willful misconduct of the [Fund], its agents or employees."  *Id.*

*At most*, the carve-out in Article 13.1 leaves open a possibility of the Fund having some type of liability to the Credit Union with respect injuries suffered by a third person.  In no respect does it waive the Fund's immunities from a court suit brought against the Fund by anyone, whether it be the Credit Union or an injured third person.  Indeed, if the Credit Union itself ever wanted to recover from the Fund on a liability falling within the carve-out, even it could not go to court.  Rather, its

49

sole recourse would be through the *entirely non-judicial* dispute resolution mechanisms prescribed by the Lease.[21]  The fact that Article 13.1 would never give *even the Fund's contractual counterparty* an ability to subject the Fund to suit or judicial process demonstrates, *a fortiori*, that the provision does not open the door for someone like Plaintiff, who is not a party to the Lease, to sue the Fund in court.[22]

### b.     Article 15.1 of the Credit Union Lease is not inconsistent with the Lease's clear disclaimer of waiver

The other provision of the Credit Union Lease on which Plaintiff focused in the district court, Article 15.1, likewise is entirely *consistent* with the clear and direct declaration of *non-waiver* set forth in Article 28.1 of the Lease.  Article 15.1 broadly requires the Credit Union (subject to certain exceptions) to "indemnify, save and hold…harmless" the Fund and the leasehold estate:

---

[21]    The Lease provides that, except for claims by the Fund for non-payment of rent, "all claims and disputes arising out of or in connection with this Lease shall be settled by the mutual agreement of the parties," or, failing that, by a "final and binding" arbitration conducted before three arbitrators in accordance with rules of the American Arbitration Association.  SJA37-38 (Art. 29.1).

[22]    In the district court, Plaintiff attempted to bolster his argument regarding Article 13.1 by comparing it to an unrelated section of the Lease, Article 14, that generally obligates the Credit Union to keep the premises free of liens.  Plaintiff pointed to an affirmative statement in the lien section to the effect that inclusion of that section in the Lease "shall in no way be deemed a waiver of the immunity of the Landlord and its property and assets, including the Building, from liens," and then claimed that the absence of "similar non-waiver language" in Article 13.1 is clear evidence that the IMF fully intended to waive immunity in regard to negligence actions arising on the Credit Union's premises."  Reconsideration Opp. 7-8.  That argument is a *non sequitur* and illustrates the extent to which Plaintiff was grasping at straws.

from any and all liability, loss, costs, expenses, including attorneys'
fees, judgments, claims, liens, and demands of any kind whatsoever in
connection with, arising out of, or by reason of any accident, injury, or
damage, to any person or property in, upon, about, or relating to
Tenant's activities or use of the Premises, or any portion thereof….

SJA25.  In the district court, Plaintiff argued that this provision, and in particular

its inclusion of the words "liability" and "judgments" in the list of things for which

the Credit Union must indemnify and protect the Fund, are "inexplicable in the

absence of the IMF's intention to waive its immunity in favor of third parties."

Reconsideration Opp. 8.

There are a host of reasons why, contrary to Plaintiff's contentions, Article

15.1 of the Lease does not constitute a waiver of the Fund's immunities from suit,

does not reflect an intent to make such a waiver, and is not inconsistent with the

Lease's clear and direct declaration of non-waiver.  *First*, nothing in Article 15.1

states or reflects any decision or action by the Fund to relinquish its absolute

immunities from suit and judicial process.  To the contrary, the sole function of

Article 15.1 is to protect *the Fund* from being subject to any negative

consequences or costs flowing from the sorts of accidents or other untoward events

listed in the provision.  This is hardly a context in which a waiver of other legal

protections enjoyed by the Fund, in the form its absolute immunities from suit and

other forms of judicial process, would be expected.

*Second*, Article 15.1's inclusion of the terms "liability" and "judgments"—as part of an expansive list of unwanted things "of any kind whatsoever" from which the Fund is to be held harmless—obviously represents the contracting parties' intent to make the scope of the provision's protections expansive and complete.  It is not reasonable to suggest, as Plaintiff did below, that those terms were included because the Fund was simultaneously either waiving or intending to waive absolute immunities in order to subject itself to judicially imposed liabilities and judgments.

*Third*, Article 15.1 can naturally be read as protecting the Fund from the potential costs and consequences of "liability" and "judgments" that are imposed on persons or entities *other than the Fund*, thus undermining Plaintiff's apparent assumption that the provision's inclusion of those terms necessarily contemplates decisions by the Fund to waive its immunities.  For example, it is conceivable that court judgments imposed on the Credit Union, particularly if they include an injunctive component, might indirectly impose costs or other consequences on the Fund with respect to the leased real estate, and it is not surprising that the Fund would insist on contractual protections from such consequences.

*Fourth*, and even putting aside the foregoing points, the *very most* that one could reasonably infer from Article 15.1 is that the Fund recognized a *possibility* that it might at some point in the future expressly waive its immunities from a

52

particular suit brought by someone who suffered an injury on the leased premises due to the fault of someone other than the Fund or its agents and employees. But even if that were so, it would establish nothing more than what already exists on the face of the basic immunity provisions of both the IOIA and the Articles of Agreement, which by their terms advert to the *possibility* that the Fund may "expressly waive[] its immunity for the purpose of any proceedings or by the terms of any contract." Articles of Agreement, Art. IX, § 3; 22 U.S.C. § 288a(b). As previously explained, *supra* pp. 36-40, if the mere possibility of a waiver, or mere speculation that a waiver *might* have occurred, were enough to obtain jurisdictional discovery from an immune entity such as the Fund, then jurisdictional discovery would be warranted in *every* case. That, of course, is not the law.

In sum, contrary to Plaintiff's argument and the district court's February 12, 2014 discovery order, there is no inconsistency at all between the Lease provisions on which Plaintiff fixated in the district court and Article 28.1 of the Lease, which Plaintiff himself concedes is a "blanket non-waiver provision." Reconsideration Opp. 9. As a result, the district court's ruling that "inconsistencies in the contracts …require further jurisdictional discovery" was wrong as a matter of law. JA62.[23]

---

[23]    As a fall-back, Plaintiff also argued below that the Lease and Security Service Agreement "establish…a framework that enables the IMF to waive immunity in the ordinary course of business." Reconsideration Opp. 7. There is no indication that the district court agreed with this argument, and, if Plaintiff

## II.    THE DISTRICT COURT'S DENIAL OF THE FUND'S MOTION TO DISMISS WAS ERRONEOUS AND VIOLATES THE FUND'S ABSOLUTE IMMUNITIES

After authorizing an unprecedented fishing expedition by Plaintiff, the district court compounded its error by denying the Fund's motion to dismiss as moot. *See* JA63.  That denial was unnecessary and incorrect; the Fund's motion to dismiss remained valid and should have been granted.  The only question before the district court on the motion to dismiss was whether the Fund's absolute immunities from all forms of judicial process barred Plaintiff's suit.  *See* JA22-23.  Plaintiff's lone basis for opposing that motion was his speculative and implausible hunch that jurisdictional discovery would somehow unearth a waiver (indeed, an express waiver) of that immunity that somehow encompasses this case.  *See* MTD Opp.  As explained above, Plaintiff's vague, speculative and implausible allegations did not come close to justifying jurisdictional discovery, even assuming

---

attempts to resurrect it on appeal, it should be rejected.  Plaintiff has pointed to nothing to suggest that any "express waiver" has occurred within the "framework" he imagines.  Moreover, as both the Lease and the Fund's initial affidavit establish, the Fund's immunities may be waived only by a decision of its Executive Board. JA25 (Lin Aff.), SJA37 (Credit Union Lease Art. 28.1).  Given that that Board "is composed of 24 Directors, who are appointed or elected by member countries or groups of countries, and the Managing Director," *see* IMF Executive Directors and Voting Power (fully cited *supra* pp. 30-31 n.12), it is unreasonable to suggest that such a waiver could occur "in the ordinary course of business" under the Lease or Security Service Agreement or that the Fund's affidavit explicitly stating that there has been no such decision should be discounted.

the questionable premise that discovery against the Fund is ever permissible.  The district court should have dismissed this suit outright.

Instead, the district court denied the Fund's motion to dismiss as "moot," apparently because Plaintiff had filed an Amended Complaint while the motion to dismiss was pending.  *See* JA63.  That was error.  The Amended Complaint included no new allegations relevant to the dispositive question: whether the Fund had waived its immunities.  *See* JA64-75.  Rather, it added one new paragraph leveling yet another irrelevant accusation: that the Fund had allegedly prevented Mr. Nyambal from being able to enter the World Bank building.  *See* Amendment Mem. 1, JA73 (¶ 20).

Plaintiff's Amended Complaint plainly "suffers from the same defects as the original and does not change the legal theories underlying the motion to dismiss." *See* 6 Wright & Miller *et al.*, *Federal Practice & Procedure* § 1476 (3d ed. 2014). This case therefore falls within a sensible and recognized exception to the general rule that a motion to dismiss is mooted by the filing of an amended complaint: "To hold otherwise would be to exalt form over substance."  *Id.*  Because the amendment to Plaintiff's pleading effected no material change to his factual allegations or legal theories, the district court should have "consider[ed] the motion as being addressed to the amended pleading."  *Id.*; *see also Ellipso, Inc. v. Mann*,

55

460 F. Supp. 2d 99, 103 (D.D.C. 2006); *Nix v. Hoke*, 62 F. Supp. 2d 110, 115 (D.D.C. 1999).

The district court's denial of the Fund's motion to dismiss, if left undisturbed, would have significant repercussions for the Fund.  Even though a key purpose of the Fund's immunities is to protect it from the burdens of litigation, it has already borne such burdens in this case for nearly two years.[24]  Returning the Fund to the district court after this appeal only to move to dismiss anew would erroneously subject it to further unwarranted and unnecessary burden, expense and delay.  *See Tuck*, 668 F.2d at 549 ("[I]mmunity, where justly invoked, properly shields defendants not only from the consequences of litigation's results but also from the burden of defending themselves." (internal punctuation omitted)).

---

[24]     To date, the Fund has moved to dismiss, opposed Plaintiff's baseless motion for jurisdictional discovery, sought reconsideration of the district court's order granting discovery, noticed its first appeal, opposed a motion for leave to amend the complaint, filed a second appeal, filed a procedural motion in this Court, and, finally, filed this brief.

## CONCLUSION

For all of the foregoing reasons, the Fund respectfully requests that this Court vindicate the Fund's absolute statutory immunities by (1) vacating the district court's minute orders directing the Fund to respond to Plaintiff's discovery requests and denying the Fund's motion to dismiss as moot and (2) remanding this case to the district court with instructions to grant the Fund's motion to dismiss.

Respectfully submitted,

/s/ Patrick J. Carome

PATRICK J. CAROME
CHRISTOPHER L. MORGAN
ADAM I. KLEIN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000
(202) 663-6363 (fax)
patrick.carome@wilmerhale.com

May 2, 2014

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 13,848 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface in 14-point Times New Roman.

/s/ Patrick J. Carome
PATRICK J. CAROME

May 2, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2014 a true and correct copy of the foregoing Brief for Appellant International Monetary Fund  was filed with the Clerk of the United States Court of Appeals for the D.C. Circuit via the Court's CM/ECF system. Counsel for all parties are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Patrick J. Carome
PATRICK J. CAROME

59

# ADDENDUM

## ADDENDUM
## TABLE OF CONTENTS

Page

Articles of Agreement of the International Monetary Fund, Art. I ........................A3

Articles of Agreement of the International Monetary Fund, Art. IX,
     §§ 3, 5, 7, 10 .................................................................................................A4

22 U.S.C. § 286h...................................................................................................A5

22 U.S.C. § 288a ...................................................................................................A6

*Kissi v. Laroisiere*, No. 82-1267 (D.D.C. June 23, 1982) ......................................A7

**Articles of Agreement of the International Monetary Fund, Art. I**

The purposes of the International Monetary Fund are:

> (i) To promote international monetary cooperation through a permanent institution which provides the machinery for consultation and collaboration on international monetary problems.

> (ii) To facilitate the expansion and balanced growth of international trade, and to contribute thereby to the promotion and maintenance of high levels of employment and real income and to the development of the productive resources of all members as primary objectives of economic policy.

> (iii) To promote exchange stability, to maintain orderly exchange arrangements among members, and to avoid competitive exchange depreciation.

> (iv) To assist in the establishment of a multilateral system of payments in respect of current transactions between members and in the elimination of foreign exchange restrictions which hamper the growth of world trade.

> (v) To give confidence to members by making the general resources of the Fund temporarily available to them under adequate safeguards, thus providing them with opportunity to correct maladjustments in their balance of payments without resorting to measures destructive of national or international prosperity.

> (vi) In accordance with the above, to shorten the duration and lessen the degree of disequilibrium in the international balances of payments of members.

The Fund shall be guided in all its policies and decisions by the purposes set forth in this Article.

**Articles of Agreement of the International Monetary Fund, Art. IX, § 3, 5, 7**

Section 3.  Immunity from judicial process

The Fund, its property and its assets, wherever located and by whomsoever held, shall enjoy immunity from every form of judicial process except to the extent that it expressly waives its immunity for the purpose of any proceedings or by the terms of any contract.

\*      \*      \*

Section 5.  Immunity of archives

The archives of the Fund shall be inviolable.

\*      \*      \*

Section 7.  Privilege for communications

The official communications of the Fund shall be accorded by members the same treatment as the official communications of other members.

\*      \*      \*

Section 10.  Application of Article

Each member shall take such action as is necessary in its own territories for the purpose of making effective in terms of its own law the principles set forth in this Article and shall inform the Fund of the detailed action which it has taken.

**22 U.S.C. § 286h. Status, privileges, and immunities of the United States**

The provisions of article IX, sections 2 to 9, both inclusive, and the first sentence of article VIII, section 2(b), of the Articles of Agreement of the Fund, and the provisions of article VI, section 5(i), and article VII, sections 2 to 9, both inclusive, of the Articles of Agreement of the Bank, shall have full force and effect in the United States and its Territories and possessions upon acceptance of membership by the United States in, and the establishment of, the Fund and the Bank, respectively.

**22 U.S.C. § 288a. Privileges, exemptions, and immunities of international organizations**

International organizations shall enjoy the status, immunities, exemptions, and privileges set forth in this section, as follows:

(a) International organizations shall, to the extent consistent with the instrument creating them, possess the capacity—

      (i) to contract;

      (ii) to acquire and dispose of real and personal property;

      (iii) to institute legal proceedings.

(b) International organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and every form of judicial process as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

(c) Property and assets of international organizations, wherever located and by whomsoever held, shall be immune from search, unless such immunity be expressly waived, and from confiscation. The archives of international organizations shall be inviolable.

(d) Insofar as concerns customs duties and internal-revenue taxes imposed upon or by reason of importation, and the procedures in connection therewith; the registration of foreign agents; and the treatment of official communications, the privileges, exemptions, and immunities to which international organizations shall be entitled shall be those accorded under similar circumstances to foreign governments.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID KISSI,                          :

        Plaintiff,                    :

        v.                            :    Civil Action No. 82-1267

JACQUES DE LAROISIERE, Managing:           **FILED**
Director, The International
Monetary Fund,                        :

        Defendant.                    :          JUN 23 1982

                                           **JAMES F. DAVEY, Clerk**

                          ORDER

        This is a <u>pro se</u> employment discrimination case brought against
the Managing Director of the International Monetary Fund (IMF).
Plaintiff claims that he was denied a junior economist position
at the IMF, and discouraged from reapplying, despite the fact
that he was well qualified for the position.  He claims that
defendant's rejection of his candidacy constitutes "an unjustified
arbitrariness," and that defendant failed to show sufficient
reason why plaintiff cannot qualify for the junior economist
position in the future.  (Although plaintiff asserts that he
was told in a letter from a member of the IMF personnel office
that he should not consider seeking future employment with that
institution, in fact the letter which plaintiff has appended
to his complaint as exhibit 3 does not say that plaintiff cannot
apply for any other positions at IMF, but only that "[s]ince
it is unlikely that a suitable position will become available
in the foreseeable future, we regret very much that we cannot
offer you encouragement toward employment prospects at the Fund.")

        Nevertheless, whatever the merit or lack thereof in plaintiff's
complaint, it must be dismissed because defendant is immune from
this suit.  The IMF is an international, intergovernmental
organization, created under the Articles of Agreement of the
International Monetary Fund, 60 Stat. 1401, T.I.A.S. No. 1501
(1945); amended, 20 U.S.T. 2775, T.I.A.S. No. 6748 (1968); amended,
29 U.S.T. 2203, T.I.A.S. No. 8937 (1976).  Section 3 of Article
IX of the Agreement provides that the IMF shall enjoy immunity
from every form of judicial process except to the extent that
it expressly waives its immunity, and Section 8 of Article IX
provides that all Governors, Executive Directors, etc. of the

A7

-2-

IMF "shall be immune from legal process with respect to acts performed by them in their official capacity except when the Fund waives this immunity...."  The IMF has not waived Mr. de Laroisiere's immunity with respect to this case.  Affidavit of Leo Van Houtven, Secretary of the International Monetary Fund, appended to defendant's Motion To Dismiss for Lack of Jurisdiction, Insufficiency of Process, and Insufficiency of Service of Process.

Plaintiff opposes the Motion to Dismiss on the ground that the above provisions of the Articles of Agreement  do not specify that defendant in the course of his duties can violate U.S. laws or cause injury to American citizens who may be employees or potential employees of the International Monetary Fund. Although plaintiff may understandably feel that it is unfair that he cannot bring what he feels is a justified complaint against defendant, the law could not be clearer as to defendant's immunity from this suit, which undeniably involves action by defendant, in rejecting plaintiff's employment applications, in his official capacity. The Articles of Agreement, as a treaty, are part of the supreme law of the land of the United States, United States Constitution, Article VI, clause 2, and additionally, Congress has provided by statute that the immunities in Article IX shall have full force and effect in the United States.  22 U.S.C. §286(h)(1976).

Accordingly, it is this 23nd day of June, 1982, hereby ORDERED, that this cause stands dismissed with prejudice.

Joyce Hens Green
Joyce Hens Green
U.S. District Judge

A8